# SMITH

## v.

# THE AMERICAN BONDING AND TRUST COMPANY.

EQUITY PRACTICE; AUDITOR'S REPORTS; EXCEPTIONS.

1. An order ratifying and confirming a report of the auditor upon a question raised by an intervening party to an equity suit, *held*, under the circumstances, to be appealable, although the order failed to dismiss the petition of intervention.

2. A general exception to an auditor's report, to the effect merely that the finding, instead of being in favor of one party, should have been in favor of the other, is insufficient.

3. Where an auditor is required to find as a matter of fact whether certain houses were "trimmed out" and he finds they were not, and so reports, an exception to the effect that he should have found they were *substantially* trimmed out, amounts to an admission of the correctness of the finding.

4. The findings of fact by an auditor, who is an officer with judicial functions, are analogous to the verdict of a jury in a suit at

common law; and have every reasonable presumption in their favor, and will not be set aside or modified unless there clearly appears to have been error or mistake on his part; *following* Richardson *v.* Van Auken, 5 App. D. C. 209, and Grafton *v.* Paine, 7 App. D. C. 255.

No. 677. Submitted January 4, 1898. Decided February 8, 1898.

HEARING on an appeal by an intervening party to a suit in equity overruling his exceptions to and ratifying and confirming a report of the auditor. *Affirmed.*

The COURT in its opinion stated the case as follows:

On May 23, 1896, one Edward R. Walton, being the owner of lots 7 and 8, in block 36, in a subdivision of land in the District of Columbia, known as Columbia Heights, executed and delivered a deed of trust thereon to George E. Emmons and Lewis J. Davis to secure to Charles W. Simpson the payment, three years thereafter, of the sum of $27,000, with interest at the rate of six per centum per annum, with which sum it was proposed and agreed between the parties to the transaction that six dwelling houses should be constructed upon the lots. It was part of the agreement that the houses should be completed for this sum, and that the lender of the money should be guaranteed by the borrower against mechanics' liens. On the same day, May 23, 1896, the present appellee, the American Bonding and Trust Company, became the surety of Walton, the builder, and executed a bond to secure the lender of the money against mechanics' liens and to insure the completion of the buildings; and Walton at the same time executed a bond of indemnity to the company to secure it against loss on account of its suretyship.

Walton proceeded with the erection of the houses; and among those who furnished materials to him was the appellant, Thomas W. Smith, who supplied lumber for use in the buildings to the value of $1,641.57. It is claimed also that Smith advanced to Walton, to enable him to go on with the houses, the sum of $358.43. For these two sums

aggregating $2,000, Walton, on September 19, 1896, exe-
cuted and delivered to Smith an assignment and transfer
of the sum of $2,000 on account of the loan which he had
negotiated, payable when the six houses should be "trimmed
out," and directed Emmons & Co. to pay the same on the
surrender of the assignment to them.    It seems that Simp-
son, the party who had made the loan, was a member of
the firm of Emmons & Co.

Some days afterwards Smith presented the order for pay-
ment.    Thereupon a question arose as to whether the build-
ings had yet been "trimmed out," and, therefore, whether
the contingency had arisen upon which Smith would have
become entitled to payment under the terms of the order.
On the same day, it seems, several mechanics' liens were
filed against the property; and the result was that the order
was not paid.

A severe storm on September 29, 1896, caused consider-
able damage to the buildings; and Walton had become
financially embarrassed, and seems to have become unable
to complete them.    Thereupon the appellee, the American
Bonding and Trust Co., made demand upon him to turn
over the property to it for completion, and, upon his refusal,
instituted the present suit; the prayer of which was for the
appointment of a receiver to take charge of the property
during the pendency of the suit, for an injunction against
Walton, and that the property should be turned over to
the complainant company for completion.    Upon the com-
ing in of Walton's answer to the bill of complaint, receivers
were appointed with the consent of the parties in accord-
ance with the prayer of the bill; and by the order appoint-
ing them they were authorized and directed to receive all
moneys coming to Walton on account of the buildings,
therein including the residue of the loan of $27,000, and
with the same to complete the buildings, and the remainder
of the money, if any there should be in their hands, to
turn into court.

The receivers thereupon collected from Emmons and Co. the sum of $4,331.28, which was the unexpended balance of the loan of $27,000. This was on November 5 1896. And it is understood that they have employed this sum, as required by the order of their appointment, in the completion of the buildings.

On November 4, 1896, the appellant Smith, filed his petition for leave to intervene in the cause ; and there was an order made by the court on the same day allowing the intervention and making him a defendant to the suit. Then, on November 21, 1896, he filed in the cause another petition for a rule on the receivers to show cause why they should not pay to him the sum of $1,641.57 out of the amount collected by them from Emmons and Co., to the extent of which sum he claimed Walton's assignment to him of $2,000 "to be a valid equitable assignment of the money in the hands of said receivers." The receivers made answer denying the right of the petitioner in the premises. Thereupon, on November 25, 1896, on motion of the counsel for petitioner, there was an order of reference to the auditor made by the court, " with directions to take testimony and report on the question whether the six dwelling houses mentioned in the petition of the said Smith were *trimmed out* at the time that the receivers herein collected the sum of $4,331.28 from George E. Emmons & Co., said report to be returned as soon as practicable."

The auditor executed the order of reference, took testimony, which he returned with his report, and found that at the time the receivers collected the sum of $4,331.28 from George E. Emmons & Co., the houses had not been trimmed out.

To the report of the auditor two exceptions were filed on behalf of Smith, one of them of a general character, to the effect that he should have found that at the time indicated the houses had been *trimmed out*; and the other substantially to the effect that the auditor should have found that

the houses had been *trimmed out* substantially, notwith-
standing that some work had not been done which, beyond
question, falls under the designation of "trimming out."

While the report and the exceptions thereto were pend-
ing undisposed of, the receivers being desirous to complete
the buildings, it was agreed between all the parties in inter-
est that they might do so and use the fund in their hands
for the purpose, upon the execution of an indemnifying
bond by the appellee company to the appellant Smith.
And this was done.

Subsequently, on March 2, 1897, the report and the ex-
ceptions thereto came on for hearing in the court below;
and the exceptions were overruled, and the auditor's report
was ratified and confirmed.   From the order of ratification
Smith has appealed to this court.

*Mr. S. T. Thomas* for the appellant.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the
appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. On behalf of the appellee, a motion was filed, which
was renewed at the final hearing before us, for the dismissal
of the appeal, on the ground that the order appealed from
was not a final order or decree from which an appeal could
properly be prosecuted.   While it is true that the order
apparently lacks some elements of finality, since it merely
confirms the auditor's report, without disposing of the inter-
venor's petition, or making any order in reference to the
same, and it would have been proper at the hearing in the
court below, upon the ratification of the report, to dismiss
the petition, and thus formally to give to the order the
character of finality, we may assume here, under the pres-
ent circumstances, that this was the purpose and effect of
the order, and, therefore, that the appeal brings the merits
of the case before us for review.

2. But it is very doubtful whether the exceptions taken to the auditor's report are sufficient to raise any question for our consideration. The auditor is not a mere examiner in chancery, to take testimony for the convenience of the court and to return it to the court for its consideration. The auditor is a judicial officer, charged with judicial functions, as has been repeatedly decided; and his findings of facts are analogous to the verdict of a jury in a suit at common law. Such findings of fact are conclusive, unless their correctness is impugned under proper proceedings for the purpose. This cause was referred to him solely for the determination by him and the report to the court of one question of fact—the time at which the houses mentioned in this cause were *trimmed out.* The reference was at the special instance and request of the appellant and by his procurement. In the order of reference there was no requirement that the testimony, which the auditor was directed to take, in order to enable him to reach a determination, should be returned to the court, or made part of his report; and it may well be questioned whether the fact that he returned the testimony with his report justifies its being considered as part of his report. But, however this may be, it is very certain that a general exception to an auditor's report, to the effect merely that the finding, instead of being in favor of one party, should have been in favor of the other, affords no sufficient ground for review of the report by the court. Nor can such ground be afforded by an exception, such as the appellant's second exception is, that the *trimming out* in this case was substantially done, although numerous things were not done which are plainly and confessedly matters of *trimming out.* This amounts to an admission of the correctness of the auditor's finding.

3. But even if we disregard these difficulties, it is quite apparent to us that the appellant's contention cannot be here sustained.

It is well settled that, in reference to findings of fact by

an auditor or master in chancery, his conclusions, "depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified, unless there clearly appears to have been error or mistake on his part" (*Tilghman* v. *Proctor*, 125 U. S. 136, 149), which rule was repeated in the case of *Callaghan* v. *Myers*, 128 U. S. 617. In the case of *Richardson* v. *Van Auken*, 5 App. D. C. 209, 213, and again in the case of *Grafton* v. *Paine*, 7 App. D. C. 255, as well as in some subsequent cases, we have had occasion to enforce this same rule. In the case of *Richardson* v. *Van Auken* it was said:

"This rule requiring exceptions to be specific and definite in pointing out the supposed errors in the report, has a close logical relation to another rule of practice equally well established, and that is that the findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law or the principles of the decree under which he acts, or some important mistake has been made in the evidence, and which has been clearly pointed out and made manifest. This rule has been repeatedly affirmed by the Supreme Court of the United States, and is one of general application in the equity practice, both in the Federal and State courts of the country." Citing *Tilghman* v. *Proctor*, and several other cases in the Supreme Court.

Tested by this rule, no sufficient cause been shown by the appellant for disturbing the auditor's report. It is not claimed that there has been any mistake by the auditor in the application of the principles of the law or of the order of reference under which he was acting, or that he made any important mistake, or any mistake whatever, in the evidence. The question referred to him was one simple question of fact. Upon that question there was conflicting testimony; and as his conclusion of fact from that conflict-

ing testimony, he held that the contingency had not occurred upon the happening of which the appellant's claim depended. Under these circumstances, we would not be disposed to reverse that conclusion, even if the testimony failed to support it less strongly than it does. We think, in fact, that there was ample testimony to support that conclusion; and that the work of *trimming out* the houses in question, upon which the appellant's right depended, had not been completed on November 5, 1896, the date of the payment by Emmons and Co. to the receivers, and which is the crucial day in the case. There were evidently many matters of detail then remaining to be done in the way of *trimming out*; and the testimony of some of the appellant's witnesses, the effect of which was in a great measure nullified upon cross-examination, to the effect that they regarded the houses as then *trimmed out*, can not be permitted to weigh in the balance as against the positive and decisive testimony that many things were then undone without which it is very plain that no house could properly be stated to have been *trimmed out*. That these details were left undone, as is claimed, in consequence of other work, such as the construction of the staircases, the erection of the mantels, and the putting in of the bath tubs and water closets, is clearly no answer to the objection. The statement shows that the period in the progress of the work had not been reached at which the houses could properly be regarded as *trimmed out*. And especially in a case like the present, where the owner was his own builder and contractor, and where the construction of the whole and entire work was within his control, and where the right of the appellant as his assignee is no greater than the right of Walton himself, it would be equivalent to permitting a man to take advantage of his own wrong to allow him to neglect and disregard these details, and to put forth a work as substantially done because the bulk of it has been done. Any such conclusion as this, if sanctioned by the courts,

would demoralize the operation of building houses and offer a premium to negligence and dishonesty.

It is practically admitted in argument on behalf of the appellant, and this is the gist of the second exception taken by him to the auditor's report, that the work of *trimming out* the houses in question was not entirely finished on the day specified, but that it was substantially completed, there being only about fifty dollars' worth of work to be done, as is claimed; and the contention is that the appellant should have been allowed the amount of his claim with a deduction of this sum of fifty dollars. But the claim of the appellant that there remained work to be done only to the amount in value of about fifty dollars, is not supported by the testimony. There is testimony that would justify an estimate of $250 or $400. We have no finding by the auditor on that point; and it is no more than a gratuitous assumption that the amount of trimming undone would cost no more than fifty dollars. But even assuming that the cost of completion would be no more than that sum, we are not justified in regarding the sum of fifty dollars as a mere trifle that may be disregarded.

The appellant seems to think that the case is one for apportionment. But that is plainly a mistaken theory. As well might it be maintained that a note payable in ninety days might in equity be regarded as payable in eighty-nine days, or that at the end of eighty-nine days a proportional amount might be regarded as due and payable. Here was an order operating as an equitable assignment of a portion of a certain specified fund, and payable on the happening of a certain specified contingency, namely, the completion of certain work. That contingency had not accrued, and the order therefore did not become payable. No principle of law or equity requires that at any time before the happening of the contingency any proportional part of the order should be regarded as payable. So to hold would be to introduce chaos into the mercantile law.

The appellant is not without his remedy; but plainly it would be neither justice nor equity to deprive other parties of money to which they are justly entitled, in order that the appellant should have the benefit of an order before that order becomes due and payable. For here his claim is based upon his order; and the apportionment of that order would be an unjustifiable preference in his favor as against others equally entitled and with claims equally just.

We are of opinion that there is no error in the order appealed from, and that this order should be *affirmed, with costs. And it is so ordered.*